# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

ELLEN ALTLAND,

                 Plaintiff,

     v.

KILOLO KIJAKAZI,[1]

             Defendant.

CIVIL ACTION NO. 3:20-CV-02168

(MEHALCHICK, M.J.)

## MEMORANDUM

Plaintiff Ellen Altland ("Altland") brings this action under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act. (Doc. 1). This matter has been referred to the undersigned United States Magistrate Judge on consent of the parties, pursuant to the provisions of 28 U.S.C. §636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 9). For the reasons expressed herein, and upon detailed consideration of the arguments raised by the parties in their respective briefs, it is hereby ordered that the Commissioner's decision be **AFFIRMED**.

## I.  BACKGROUND AND PROCEDURAL HISTORY

On May 15, 2018, Altland protectively filed an application for Title II disability insurance benefits, claiming disability beginning August 11, 2015, due to Postural Orthostatic

---

[1] The Court has amended the caption to replace, as the named defendant, Acting Social Security Commissioner Andrew Saul with his successor, Social Security Commissioner Kilolo Kijakazi. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

Tachycardia Syndrome, Hypermobile Ehlers-Danlos Syndrome, asthma, joint pain, previous back injury, and seasonal affective disorder. (Doc. 16-6, at 4; Doc. 16-37, at 6). The Social Security Administration initially denied the application on August 16, 2018, prompting Altland's request for a hearing, which Administrative Law Judge ("ALJ") Gerard W. Langan held on July 18, 2019. (Doc. 16-3, at 5; Doc. 16-5, at 2). In a written decision dated November 6, 2019, the ALJ determined that Altland is not disabled and therefore not entitled to benefits under Title II. (Doc. 16-2, at 13). On September 24, 2020, the Appeals Council denied Altland's request for review. (Doc. 16-2, at 2).

On November 19, 2020, Altland filed the instant action. (Doc. 1). The Commissioner responded on May 13, 2021, providing the requisite transcripts from Altland's disability proceedings. (Doc. 15; Doc. 16). The parties then filed their respective briefs with Altland alleging one base for reversal or remand. (Doc. 19; Doc. 22).

II.   **STANDARDS OF REVIEW**

To receive benefits under Title II of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1509. To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).[2] Additionally,

---

[2] A "physical or mental impairment" is defined as an impairment resulting from

to be eligible to receive Title II benefits, a claimant must be insured for disability insurance benefits. 42 U.S.C. § 423(a)(1)(a); 20 C.F.R. § 404.131.

### A. ADMINISTRATIVE REVIEW

In evaluating whether a claimant is disabled, the "Social Security Administration, working through ALJs, decides whether a claimant is disabled by following a now familiar five-step analysis." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 200–01 (3d Cir. 2019). The "burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security." *Hess*, 931 F.3d at 201; *see* 20 C.F.R. § 404.1512(a)(1). Thus, if the claimant establishes an inability to do past relevant work at step four, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1512(a)(1).

### B. JUDICIAL REVIEW

The Court's review of a determination denying an application for Title II benefits is limited "to considering whether the factual findings are supported by substantial evidence." *Katz v. Comm'r Soc. Sec.*, No. 19-1268, 2019 WL 6998150, at *1 (3d Cir. Dec. 20, 2019). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). The quantum of proof is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not

---

"anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict created by such evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

The question before the Court, therefore, is not whether Altland is disabled, but whether the Commissioner's determination that Altland is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). If "the ALJ's findings of fact . . . are supported by substantial evidence in the record," the Court is bound by those findings. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

III.    **THE ALJ'S DECISION**

In his written decision, the ALJ determined that based on Altland's application filed on May 15, 2018, "the claimant was not disabled under sections 216(i) and 223(d) of the Social Security Act." (Doc. 16-2, at 30). The ALJ reached this conclusion after proceeding

- 4 -

through the five-step sequential analysis provided in 20 C.F.R. § 404.1520(a)(4).

A.   STEP ONE

At step one of the five-step analysis, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If a claimant is engaging in substantial gainful activity, the claimant is not disabled, regardless of age, education, or work experience. 20 C.F.R. § 404.1520(b). Substantial gainful activity is defined as work activity requiring significant physical or mental activity and resulting in pay or profit. 20 C.F.R. § 404.1572(a)–(b). The ALJ must consider only the earnings of the claimant. 20 C.F.R. § 404.1574(a)(2). Here, the ALJ determined that "[Altland] has not engage in substantial gainful activity since March 29, 2018, the amended alleged onset date." (Doc. 16-2, at 18).

B.   STEP TWO

At step two, the ALJ must determine whether the claimant has a medically determinable impairment—or a combination of impairments—that is severe and meets the 12-month duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ determines that a claimant does not have an "impairment or combination of impairments which significantly limits" the claimant's "physical or mental ability to do basic work activities," the ALJ will find that the claimant does not have a severe impairment and is therefore not disabled. 20 C.F.R. § 404.1520(c). If, however, a claimant establishes a severe impairment or combination of impairments, the ALJ proceeds to consider step three. Here, the ALJ found that Altland had the following severe impairments: Postural Orthostatic Tachycardia Syndrome ("POTS"), Hypermobile Ehlers-Danlos Syndrome ("HEDS"), asthma, and obesity. (Doc. 16-2, at 18). Additionally, the ALJ found that Altland had the following non-severe impairments: right shoulder pain, neck pain and tightness, sleep apnea, coarse right hand tremor, irritable

bowel syndrome, seasonal affective disorder, and anxiety. (Doc. 16-2, at 18-20).

C.   STEP THREE

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in the version of 20 C.F.R. § Pt. 404, Subpt. I, App. 1 that was in effect on the date of the ALJ's decision. 20 C.F.R. § 404.1520(a)(4)(iii). The sections in this appendix are commonly referred to as "listings." The ALJ considered listings 1.02 (major disfunction of a joint(s)); 3.02 (chronic respiratory disorders); 3.03 (asthma); 4.05 (recurrent arrhythmias). (Doc. 16-2, at 21-22). Here, the ALJ determined that none of Altland's impairments, considered individually or collectively, met or medically equaled the severity of a listed impairment. (Doc. 16-2, at 21-22).

D.   RESIDUAL FUNCTIONAL CAPACITY

Between steps three and four, the ALJ evaluates the claimant's residual functional capacity ("RFC"), crafted upon consideration of all the evidence presented. At this intermediate step, the ALJ considers all of the claimant's symptoms and "the extent to which [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). This involves a two-step inquiry according to which the ALJ must (1) determine whether an underlying medically determinable mental impairment or impairments could reasonably be expected to produce the claimant's symptoms; and, if so, (2) evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. *See* 20 C.F.R. § 404.1529(b)–(c).

Here, the ALJ found that while Altland's medically determinable impairments could

reasonably be expected to cause the alleged symptoms, Altland's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Doc. 16-2, at 23).

Considering all evidence in the record, the ALJ determined that Altland had the RFC "to perform sedentary work," subject to the following non-exertional limitations:

> [Altland] must avoid unprotected heights. She can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs. She can tolerate occasional exposure to temperature extremes, humidity, wetness, vibration, and environmental irritants, such as dust, fumes, odors, and gases. She must avoid bending at the waist. [Altland] should be afforded the ability to alternate between sitting and standing every 30 minutes, in order to change position, while remaining on task.

(Doc. 16-2, at 22).

E.    STEP FOUR

Step four requires the ALJ to determine whether the claimant had, during the relevant period, the RFC to perform the requirements of his or her past relevant work regardless of the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work is work that the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn the requirements of the work. 20 C.F.R. § 404.1520(a)(4)(iv). The ALJ considers whether the claimant retains the capacity to perform the particular functional demands and job duties of the past relevant work, either as the claimant actually performed the work or as ordinarily required by employers throughout the national economy. *Garibay v. Comm'r Of Soc. Sec.*, 336 F. App'x 152, 158 (3d Cir. 2009) (quoting SSR 82–6). "If the claimant can perform [her] past relevant work despite [her] limitations, [she] is not disabled." *Hess*, 931 F.3d at 202 (citing 20 C.F.R. § 404.1520(a)(4)(iv)). Here, the ALJ determined that through the date last insured, Altland was

unable to perform her past relevant work as an outpatient nurse, office nurse, or floor nurse. (Doc. 16-2, at 28). Thus, the ALJ proceeded to step five of the sequential analysis. (Doc. 16-2, at 28).

F.    STEP FIVE

At step five of the sequential analysis, the ALJ considers the claimant's age, education, and work experience to determine whether the claimant can make the adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v). If a claimant can adjust to other work, he or she will not be considered disabled. 20 C.F.R. § 404.1520(a)(4)(v). Here, considering Altland's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Altland can perform. (Doc. 16-2, at 28). In making this determination, the ALJ relied on the expertise of the vocational expert, who testified that Altland can perform the requirements of occupations, such as a nurses' registry coordinator, blood band control clerk, and charge and account clerk, which are occupations with open positions ranging from 42,000 to 90,000 nationally. (Doc. 16-2, at 29). Accordingly, the ALJ determined that Altland was not disabled and denied her application for benefits. (Doc. 16-2, at 29).

IV.   **DISCUSSION**

Altland advances one main argument on appeal. (Doc. 19, at 8). Specifically, Altland argues that the ALJ's decision is not supported by substantial evidence because the ALJ failed "to include any limitations to work pace and/or attendance on account of the combination of [Altland's] pain, headaches, fatigue, brain fog, and dizziness resulting from her POTS and HEDS." (Doc. 19, at 8). Specifically, Altland argues that:

> "(1) the ALJ failed to properly assess limitations to work pace and/or attendance; (2) the ALJ improperly failed to include the limitations assessed by

treating physician, Dr. Kolade; (3) the ALJ's failure to include any limitations to work pace and/or attendance is not supported by any medical opinion and is otherwise not supported by substantial evidence; and (4) the new evidence consisting of the opinion of Dr. Bitshteyn could reasonably change the outcome of this case."

(Doc. 19, at 3).

In response, the Commissioner maintains that the ALJ's decision is supported by substantial evidence and is in accordance with the law and regulations. (Doc. 22, at 2).

A.   SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S RFC DETERMINATION

Altland asserts that the ALJ's RFC assessment is not supported by substantial evidence. (Doc. 19, at 8). Specifically, Altland argues that the ALJ erroneously found the opinion of Dr. Kolade to be "minimally persuasive" because the overall record identifies "ongoing symptoms that would affect work pace and/or attendance." (Doc. 19, at 9). The Commissioner contends that the ALJ followed the revised regulations and "reasonably found that Dr. Kolade's October 25, 2018 opinion was not persuasive." (Doc. 22, at 20). Further, the Commissioner argues that substantial evidence supports the ALJ's RFC decision that Altland could perform a range of sedentary work. (Doc. 22, at 20).

Assessing a claimant's RFC falls within the purview of the ALJ. 20 C.F.R. § 404.1546(c); SSR 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996). "[RFC] is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v. Comm'r of Soc. Sec.,* 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel,* 181 F.3d 358, 359 (3d Cir. 1999)). Specifically, one's RFC reflects the *most* that an individual can still do, despite his or her limitations, and is used at steps four and five to evaluate the claimant's case. 20 C.F.R. §§ 404.1520, 404.1545; SSR 96-8P, 1996 WL 374184 at *2. In crafting the RFC, the ALJ must consider all the evidence of record, including

medical signs and laboratory findings, daily activities, medical source statements, and a claimant's medical history. SSR 96-8p, 1996 WL 374184, at *5; *see also Mullin v. Apfel*, 79 F. Supp. 2d 544, 548 (E.D. Pa. 2000). An ALJ's RFC findings, however, must be supported by the medical evidence. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986). "[O]nce the ALJ has made this [RFC] determination, [a court's] review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence." *Black v. Berryhill*, No. 16-1768, 2018 WL 4189661 at *3 (M.D. Pa. Apr. 13, 2018). Applying this standard to the present record, the Court finds substantial evidence to support the ALJ's RFC determination.

In *Cotter v. Harris*, the Third Circuit clarified that the ALJ must not only state what evidence he or she considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris*, 642 F.2d 700, 704, 706-707 (3d Cir. 1981). However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See, e.g.*, *Knepp*, 204 F.3d at 83. "There is no requirement that the ALJ discuss in her opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004).

As this matter involves a claim filed after March 27, 2017, the new regulatory framework governing the evaluation of medical opinions applies to the ALJ's evaluation of the medical opinions in the record. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132-01 (Mar. 27, 2017)); *see also* 82 Fed. Reg. 15263 (March 27, 2017); 82 Fed. Reg.

16869 (corrective notice) (explaining that SSR 96-2p and 96- 5p do not apply to newly filed or pending claims after March 27, 2017). Under the new regulations, rather than assigning weight to medical opinions, the Commissioner will articulate "how persuasive" he or she finds the medical opinions. 20 C.F.R. § 404.1520c(b). And the Commissioner's consideration of medical opinions is guided by the following factors: supportability; consistency; relationship with the claimant (including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship); specialization of the medical source; and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1520c(c). The most important of these factors is the "supportability" of the opinion and the "consistency" of the opinion. 20 C.F.R. § 404.1520c(b)(2).

The ALJ must explain how he or she considered the "supportability" and "consistency" of a medical source's opinion. 20 C.F.R. § 404.1520c(b)(2). Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors, but if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors. 20 C.F.R. § 404.1520c(b)(3). To facilitate judicial review, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests" and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Cotter*, 642 F.2d at 706-07.

On October 25, 2018, Victor Kolade, M.D. ("Dr. Kolade"), Altland's primary care provider, completed a questionnaire. (Doc. 16-13, at 44). Dr. Kolade stated that Altland's POTS, HEDS, asthma, and sleep apnea would cause pain, fatigue, diminished concentration,

diminished work pace, and need to rest at work. (Doc. 16-13, at 44). Dr. Kolade also stated that Altland's pain, fatigue, diminished concentration or work pace, or need to rest would lead to Altland being off-task during a workday for more than 33% of the day and being absent more than four days per month. (Doc. 16-13, at 44-45). Additionally, Dr. Kolade noted that a side effect of Altland's medication includes fatigue. (Doc. 16-13, at 45). Further, Dr. Kolade stated that Altland can sit for approximately six hours in an eight-hour workday, should change positions once every hour, can stand for one hour in an eight-hour workday, and can safely lift up to ten pounds frequently for two-thirds of the day without causing excessive pain or worsening of her conditions. (Doc. 16-13, at 45).

The ALJ found Dr. Kolade's opinion to be "minimally persuasive." (Doc. 16-2, at 27). The ALJ summarized the questionnaire Dr. Kolade completed and found that the opinion "is not supported by [Dr. Kolade's] treatment notes, except to the extent they reflect [Altland's] subjective reports of the frequency and limiting effects of her symptoms." (Doc. 16-2, at 27). The ALJ found that Dr. Kolade's physical examinations are "routinely normal" and "that the opinion is not consistent with the record as a whole, such as the normal physical examination findings of other treating providers." (Doc. 16-2, at 27). Further, the ALJ stated that "while Dr. Kolade is a general practitioner providing [Altland] with primary care, [Altland's] treating providers specializing in cardiology and neurology have not noted such extreme functional limitations." (Doc. 16-2, at 27). Specifically, the ALJ mentions the opinion of Altland's cardiologist, Pramod Deshmukh, M.D. ("Dr. Deshmukh"), who recommended Altland do core strengthening exercises and walk at least three-miles every day (Doc. 16-11, at 102), and Altland's neurologist, Dr. Blitshteyn, who recommended Altland exercise on a recumbent bike five to eight minutes every day (Doc. 16-14, at 71). (Doc. 16-2,

at 27). The ALJ emphasized that "[t]here is no indication from any of [Altland's] specialists that she should use a cane or ambulation, limit her standing or walking, or lay down for any period during the day." (Doc. 16-2, at 27). Finally, the ALJ noted that "Dr. Kolade's treatment notes indicate that he 'perceives' [Altland] to be disabled due to POTS/EDS/low effect tolerance." (Doc. 16-2, at 27). However, the ALJ stated that because the decision of whether Altland is disabled or not is an issue reserved to the Commissioner, Dr. Kolade's opinion is "neither valuable nor persuasive evidence and will not be analyzed." (Doc. 16-2, at 27).

Altland contends that the overall record identifies ongoing symptoms that would affect work pace and/or attendance, namely problems with pain, dizziness, lightheadedness, and brain fog. (Doc. 19, at 9). Altland argues that the ALJ improperly relied on the opinion of state agency medical consultant David P. Clark, M.D. ("Dr. Clark"), because Dr. Clark's opinion is silent on the effects of Altland's work pace and/or attendance.[3] (Doc. 19, at 8). Further, Altland argues that the ALJ failed to reconcile the "apparent inconsistency in the record between the recommendation to exercise and the fact that [Altland] cannot." (Doc. 19, at 10). The Commissioner responds that Altland's argument is "essentially an invitation to re-weigh the evidence," but "even if [Altland] can point to some selective evidence in support of her position, that is not enough to overcome the substantial evidence standard, which

---

[3] On August 15, 2018, Dr. Clark examined Altland and determined that she retains the capacity for medium exertional work with limitations to occasional postural activities and no concentrated exposure to environmental conditions or hazards. (Doc. 16-4, at 10). The ALJ found the opinion of Dr. Clark to carry "some persuasiveness" because he "supported his determination with an explanation referencing the medical records, including the lack of medical evidence that [Altland] needs a cane." (Doc. 16-2, at 27).

requires only that the ALJ's decision be supported by more than a scintilla of evidence." (Doc. 22, at 21).

The ALJ properly applied the new set of Social Security Regulations for evaluating medical evidence that eliminates the hierarchy of medical opinions and states that an ALJ will not defer to any medical opinions, even those from treating sources. (Doc. 16-2, at 27); see 20 C.F.R. § 404.1520c(a). In addition to objective medical evidence, in evaluating the intensity and persistence of pain and other symptoms, the ALJ should consider the claimant's daily activities; location, duration, frequency and intensity of pain; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medications; treatment other than medication; and other measures the claimant uses to address the pain or other symptoms. 20 C.F.R. § 404.1529(c)(3). Considering Altland's activities of daily living, including preparing dinner, grocery shopping with help, and sitting at the computer for an hour at a time, the ALJ found that "[t]hese activities are consistent with a capacity for work at the sedentary exertional level with the additional limitations set forth above." (Doc. 16-2, at 26). Therefore, in reconciling the contrasting medical opinions of Dr. Kolade and Dr. Clark with the inconsistencies in Altland's abilities and limitations, the ALJ concluded that the opinion of Dr. Kolade was "minimally persuasive" and inconsistent with the overall medical record. (Doc. 16-2, at 27); see Williams o/b/o J.H. v. Kijakazi, No. 1:20-CV-00624, 2021 WL 4439438, at *13 (M.D. Pa. Sept. 28, 2021) ("ALJ chose between contrasting medical opinions, giving greater weight to those opinions which he found were more congruent with [the claimant's] medical records and activities of daily living.").

Weighing the evidence, the ALJ determined that: "[Altland] has several severe physical impairments. However, the objective studies, physical findings, and level and

efficacy of treatment, in addition to other factors aside from the medical evidence, do not provide evidence that would reasonably support a finding that the claimant is as limited as alleged." (Doc. 16-2, at 27). The Court finds that the ALJ's reasoning in weighing the opinions of Dr. Kolade and Dr. Clark is supported by substantial evidence. (Doc. 16-2, at 27). Although Altland is correct that the ALJ does not expressly address a limitation for work pace and/or attendance, the ALJ limited Altland "to sedentary exertional work, to include sitting about 6 hours and standing and/or walking up to 2 hours in an 8-hour workday;" changing positions between sitting and standing every 30-minutes, avoiding bending at the waist, unprotected heights, ladders, ropes, and scaffolds; and "only occasional exposure to temperature extremes, humidity, wetness, vibrations, and environmental irritants." (Doc. 16-2, at 25-26). Thus, the ALJ accounted for Altland's limitations in making his RFC determination.

In crafting the RFC, the ALJ considered all of Altland's severe and non-severe mental impairments, including her POTS, HEDS, asthma, obesity, and sleep apnea. (Doc. 16-2, at 18-19). Therefore, the Court finds that the ALJ properly conducted Altland's RFC assessment. Because the ALJ properly explained his reasoning with regard to the factors of supportability and consistency as to the opinion of Dr. Kolade, per 20 C.F.R. § 404.1520c, he properly fulfilled his duty in articulating the basis for his findings. (Doc. 16-2, at 27); *see Cotter,* 642 F.2d at 706-07. A reviewing court may not set aside the Commissioner's final decision if it is supported by substantial evidence, even if the court would have reached different factual conclusions. *Hartranft,* 181 F.3d at 360 (*citing Monsour Medical Center v. Heckler,* 806 F.2d 1185, 1190-91 (3d Cir. 1986) ); 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Thus,

because the ALJ provided adequate articulation for his RFC determination, which is grounded in substantial evidence, the Court finds no basis for disturbing the ALJ's RFC determination.

    B.    THE ALJ DID NOT ERR IN HIS ASSESSMENT OF ALTLAND'S SUBJECTIVE COMPLAINTS.

Second, Altland argues that the ALJ failed to consider her subjective reports of the frequency and limiting effects of her symptoms, which are consistent with the opinion of Svetlana Blitshteyn, M.D. ("Dr. Blitshteyn"). (Doc. 19, at 10). The Commissioner responds that "even if [Altland] can point to some selective evidence in support of her position, that is not enough to overcome the substantial evidence standard, which requires only that the ALJ's decision be supported by more than a mere scintilla of evidence. And here, substantial – overwhelming, even – evidence supports the ALJ's decision." (Doc. 22, at 21).

In determining whether the claimant is disabled, the ALJ must "consider all [of the claimant's] symptoms, including pain, and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *See* 20 C.F.R. § 404.1529(a); SSR 16-3p. Subjective complaints, then, must be given due consideration, but will be evaluated in the context of objective evidence. *See* 20 C.F.R. § 404.1529; *Chandler, 667 F.3d at 363* ("statements about your pain or other symptoms will not alone establish that you are disabled."). "In evaluating the intensity and persistence of [the claimant's] symptoms, including pain, [the ALJ must] consider all of the available evidence, including [the claimant's] medical history, the medical signs and laboratory findings and statements and how [the claimant's] symptoms affect [her]." 20 C.F.R. § 404.1529(a); *see Williams v. Sullivan, 970 F.2d 1178, 1186 (3d Cir. 1992).* "To establish disability, there must

be objective medical evidence from an acceptable medical source showing that the claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged and that leads to the conclusion that the claimant is disabled when considered with the other evidence of record." *Stancavage*, 469 F.Supp.3d at 337.

The burden is on Altland to demonstrate, by medical findings, that he satisfies the requirements for disability insurance benefits under Title II. *See Williams*, 970 F.2d at 1186. Here, the ALJ found that, while Altland's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," Altland's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Doc. 16-2, at 23). The ALJ determined that "[a]s a result of the combination of [Altland's] impairments and related symptoms," he limited Altland "to sedentary exertional work, to include sitting about 6 hours and standing and/or walking up to 2 hours in an 8-hour workday." (Doc. 16-2, at 25-26). The ALJ noted that "the record shows improvements to [Altland's symptoms with treatment requiring occasional adjustments," referencing Dr. Kolade's treatment files from March 2017 to July 2018, which state that, over time, Altland reported improved walking tolerance, better blood pressure on medication, less fatigue. (Doc. 16-2, at 24). The ALJ specifically addressed Dr. Kolade's findings and incorporated Altland's treatment records into his RFC to account for Altland's physical limitations. (Doc. 16-2, at 26). Additionally, the ALJ mentioned Altland's "problems with blood circulation," "dizziness and weakness," and asthma in making additional limitations to Altland's RFC determination. (Doc. 16-2, at 26).

Accordingly, the Court finds that the ALJ fulfilled his duty in considering Altland's

- 17 -

subjective symptom allegations and weighing them against the entire medical record. 20 C.F.R. § 404.1529(a). The ALJ provided a thorough explanation for affording little weight to Altland's symptom, finding that "[u]ltimately, [Altland] alleges a greater degree of debilitation than the medical evidence can support." (Doc. 16-2, at 27); *see Williams*, 970 F.2d at 1186 (plaintiff failed to present medical evidence to substantiate subjective complaints where his physicians presented conflicting evaluations of his health conditions). Because the Court cannot re-weigh the evidence, the Court finds the ALJ has not erred in his consideration of Altland's subjective symptom allegations. *Rutherford*, 399 F.3d at 552 ("In the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute our own conclusions for those of the fact-finder.").

C.   NEW EVIDENCE FROM DR. BITSHTEYN IS INADMISSIBLE

Finally, Altland argues that the Court should remand the ALJ's decision because Dr. Blitshteyn submitted a questionnaire on March 2, 2020, after the ALJ's decision, which could reasonably change the outcome of this case. (Doc. 19, at 13-14). Altland argues that the questionnaire supports Dr. Kolade's opinion, is well-supported by a detailed explanation, and it assesses limitations inconsistent with the ALJ's RFC determination. (Doc. 19, at 13-14). The Commissioner responds that remand for reconsideration is unwarranted because there is no reasonable possibility that Dr. Blitshteyn's recent questionnaire would have changed the ALJ's decision.

Remand may be appropriate if a claimant produces new and material evidence that was not before the ALJ. When the Appeals Council denies review, evidence that was not before the ALJ may only be used to determine whether it provides a basis for remand under sentence six of section 405(g), 42 U.S.C. ("Sentence Six"). *See Szubak v. Secretary of Health and*

*Human Servs.,* 745 F.2d 831, 833 (3d Cir.1984); *Matthews v. Apfel,* 239 F.3d 589, 591-92 (3d Cir. 2001). Sentence Six requires a remand when evidence is "new" and "material" if the claimant demonstrated "good cause" for not having incorporated the evidence into the administrative record. *Szubak,* 745 F.2d at 833. In order to be material, "the new evidence [must] relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition." *Szubak,* 745 F.2d at 833. The relevant time period is "the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. § 404.970(b); *Mathews,* 239 F.3d at 592. The materiality standard "requires that there be a reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination." *Szubak,* 745 F.2d at 833.

On January 19, 2018, Dr. Blitshteyn examined Altland in a neurology consultation. (Doc. 16-14, at 70). Reviewing Altland's "[c]linical features in conjunction with the orthostatic vital signs assessment," Dr. Blitshteyn diagnosed Altland with POTS. (Doc. 16-14, at 71). Additionally, Dr. Blitshteyn diagnosed Altland with HEDS "[g]iven other features, co-morbid conditions, and Beighton score of at least 5/9." (Doc. 16-14, at 71). Dr. Blitshteyn noted that Altland experienced "significant improvement" on medication. (Doc. 16-14, at 71). Dr. Blitshteyn recommended that Altland increase her salt and water intake and exercise on a recumbent bike for 5-8 minutes every day and increase slowly over time. (Doc. 16-14, at 71).

From February 2019 to July 2019, Dr. Blitshteyn saw Altland every 2 months. (Doc. 16-14, at 72-73). After the final visit, on July 15, 2019, Dr. Blitshtey reported:

Increased exercise to walking 15 min, up to 15 min on a bike whereas she

started with a few min. Sleep is good, 10 hrs, mood is good too. Therapy with Connie is helping with depression, setting boundaries. MRI of the brain in May of 2019 was unremarkable. Abnormal gait episodes are much less now, 1-2 times a week, when she is very tired, possibly POSTs-related, coordination is impaired, associated with a headache, possibly migraines.

(Doc. 16-14, at 73).

On March 2, 2020, Dr. Blitshteyn completed a questionnaire about Altland's limitations. (Doc. 16-2, at 67). Dr. Blitshteyn stated that pain, fatigue, diminished concentration or work pace, or need to rest would lead to Altland being off-task during a workday for more than 33% of the day and being absent more than four days per month. (Doc. 16-2, at 67-68). Additionally, Dr. Blitshteyn noted that Altland's medications can cause side effects, including worsening of pre-existing fatigue, difficulty concentrating, and other neurologic symptoms. (Doc. 16-2, at 68). The questionnaire was sent to the Appeals Council on March 4, 2020. (Doc. 16-2, at 66).

Altland has not satisfied the statutory criteria for a sentence six remand – that is, whether the evidence is (1) new and (2) material, and if there was (3) good cause why it was not presented to the ALJ. *See* 28 U.S.C. § 405(g) (sentence six); *Matthews*, 239 F.3d at 592–93; *see also Szubak*, 745 F.2d at 833. The Court can only look at evidence that was actually presented to the ALJ in determining whether the ALJ's decision was supported by substantial evidence. It is the claimant's burden to provide "some justification for the failure to acquire and present such evidence to the [ALJ]." *Szubak*, 745 F.2d at 833.

It is undisputed that Dr. Blitshteyn's questionnaire was "new" to the Appeals Council because Dr. Blitshteyn submitted her medical opinion on March 2, 2020 (Doc. 16-2, at 67), the ALJ denied Altland's application for disability benefits on November 6, 2019 (Doc. 16-2, at 13), and the Appeals Council denied Altland's initial appeal of the ALJ's decision on

September 24, 2020. (Doc. 16-2, at 2). However, the evidence must truly be "new" and "not merely cumulative of what is already in the record." *Szubak*, 745 F.2d at 833. Dr. Blitshteyn's examination of Altland on July 15, 2019, reported that Altland was improving and was able to increase her walking and biking duration to 15 minutes. (Doc. 16-14, at 73). Dr. Blitshteyn's questionnaire is identical to Dr. Kolade's questionnaire, which was in the record before the ALJ. (Doc. 16-2, at 67; Doc. 16-13, at 44-45). Therefore, Dr. Blitshteyn's questionnaire cannot be considered "new" evidence because it does not offer any new facts that were not already available prior to the ALJ's decision. *See Cunningham v. Colvin*, No. 1:13-CV-01659, 2014 WL 4626506, at *10 (M.D. Pa. Sept. 15, 2014) (evidence was not "new" even though it expanded upon prior expression of opinion on whether plaintiff's condition met the listing criteria because "it does not offer any new *facts* that were not already available prior to the ALJ's decision.").

Next, Altland argues that the questionnaire is "material" because "it goes directly to [Altland's] functional limitations during the period at issue, and more specifically, controverts a factual assertion by the ALJ affecting the weight given to Dr. Kolade." (Doc. 19, at 13). The Commissioner asserts that there is no evidence suggesting that the questionnaire would have changed the ALJ's decision. (Doc. 22, at 24). To be "material," the new evidence must "relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition." *Szubak,* 745 F.2d at 833. Again, Dr. Blitshteyn's questionnaire is identical to Dr. Kolade's questionnaire and does not offer any "new" evidence regarding a new disability or further deterioration of Altland's previous condition. *See Szubak,* 745 F.2d at 833. Moreover, the questionnaire does not indicate that it applies to Altland's disabling functional limitations

during the relevant period. (Doc. 16-2, at 67); *see Seney v. Colvin*, 185 F.Supp.3d 475, 492 (D.Del. 2016) (new evidence was not material because it failed to demonstrate disabling limitations during the relevant period and the ALJ accounted for the plaintiff's medical conditions as supported by the record). The ALJ adequately considered the contents of Dr. Kolade's questionnaire in making his decision and accounted for Altland's work pace and/or attendance limitations by finding that she could perform sedentary work. *See supra*; *see also Bohner v. Saul*, No. 3:18-CV-0046, 2019 WL 4750284, at *6 (M.D. Pa. Sept. 30, 2019) (new evidence did not "provide any insight into the 'severity' of plaintiff's syncope before her date-last-insured," and "the ALJ fully considered the severity of plaintiff's syncope in her step-two determination."). Therefore, Dr. Blitshteyn's questionnaire is not "material." *Szubak*, 745 F.2d at 833.

Finally, Altland states that there was good cause as to why Dr. Blitshteyn's questionnaire was not previously presented to the ALJ because it is "a proprietary document prepared by counsel that did not exist on or before March 2, 2020 and counsel had no control over when Dr. Blitshteyn would ultimately complete the document." (Doc. 19, at 13-14). However, Altland does not offer any valid justification whatsoever for her failure to acquire Dr. Blitshteyn's questionnaire earlier and present it to the ALJ. *See Cunningham*, 2014 WL 4626506, at *10. Altland's excuse for not submitting the evidence before the ALJ's decision because "it did not exist" fails to establish the requisite "good cause" element. *See Bjorkman v. Colvin*, No. 3:16-CV-778, 2016 WL 6780711, at *12 (M.D. Pa. Nov. 16, 2016) ("[T]he fact that the letter did not exist when the ALJ closed the case is not a basis to find 'good cause' because Plaintiff has not presented evidence that the letter could ... not have been obtained earlier."); *Dwyer v. Colvin*, No. 3:13-CV-2114, 2014 WL 4546775, at *14 (M.D. Pa. Sept. 12,

2014) (plaintiff failed to show good cause as to why evidence was not initially obtained and presented to the ALJ). Altland could have obtained Dr. Blitshteyn's questionnaire prior to the ALJ's decision, but did not do so.

Accordingly, Altland has failed to satisfy the statutory requirements for a sentence-six remand, and the Court is precluded from further considering the additional evidence submitted to the Appeals Council by Altland after the ALJ's decision had been issued on November 6, 2019.

V.   **Conclusion**

Based on the foregoing, the Commissioner's decision to deny Altland's application for disability benefits is **AFFIRMED**, and final judgment shall be entered in favor of the Commissioner and against Altland. The Clerk of Court is directed to **CLOSE** this case.

An appropriate Order follows.

Dated: January 18, 2022              *s/ Karoline Mehalchick*
                                     **KAROLINE MEHALCHICK**
                                     **Chief United States Magistrate Judge**